

Villanova University School of Law

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-6-2004

# Rector Wardens v. Amer Natl Fire Ins

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1703

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Rector Wardens v. Amer Natl Fire Ins" (2004). *2004 Decisions.* Paper 719.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/719

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

NOS. 03-1703 and 03-1732

THE RECTOR, WARDENS AND VESTRYMEN OF
ST. PETER'S CHURCH IN THE CITY OF PHILADELPHIA

v.

AMERICAN NATIONAL FIRE INSURANCE COMPANY;
AGRICULTURAL INSURANCE COMPANY,
Appellants

On Appeal From the United States
District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 00-cv-02806)
District Judge: Hon. Herbert J. Hutton

Argued January 27, 2004

BEFORE: NYGAARD, FUENTES and STAPLETON, <u>Circuit Judges</u>

(Opinion Filed May 6, 2004)

Richard L. McMonigle, Jr. (Argued)
Tracey N. Kilcullen
1600 John F. Kennedy Boulevard
Four Penn Center
Philadelphia, PA 19103
 Attorneys for Appellants

Stephen J. Mathes
Kevin J. Kotch (Argued)
Hoyle, Fickler, Herschel & Mathes
One South Broad - Suite 1500
Philadelphia, PA 19107
  Attorneys for Appellee

———————

OPINION OF THE COURT

———————

STAPLETON, <u>Circuit Judge</u>:

American National Fire Insurance Company ("ANF") and Agricultural Insurance Company ("Agricultural"; collectively, the "Appellants") appeal from the judgment entered on behalf of plaintiff The Rector, Wardens and Vestrymen of St. Peter's Church in the City of Philadelphia ("St. Peter's Church" or "the Church"). St. Peter's Church filed this diversity suit against Appellants alleging, *inter alia*, that ANF breached its duty to defend under an insurance contract. In ruling on the parties' cross-motions for summary judgement, the District Court held that: (1) ANF's policy imposed a duty upon it to provide a defense to the original and the amended complaints in the underlying litigation; (2) ANF breached that duty; and (3) ANF was not guilty of bad faith. The parties thereupon stipulated to the entry of judgment in favor of St. Peter's Church in the amount of $314,000. Pursuant to the same stipulation, the parties also agreed that if the District Court's summary judgment rulings were reversed on appeal, the District Court

2

would enter judgment in favor of St. Peter's Church in the amount of $284,000. Appellants now seek to appeal from the District Court's judgment, but only as to the District Court's ruling that ANF breached its contractual duty to defend. We will affirm the District Court's judgment.

The parties are familiar with the facts and procedural history of this case. Because we write only for them, we limit ourselves to a brief statement of the reasons for our decision.

## I.

The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the citizenship of the parties was diverse and the amount in controversy was in excess of $75,000. The District Court also had jurisdiction to enter a declaratory judgment under 28 U.S.C. § 2201. We have jurisdtiction over this appeal pursuant to 28 U.S.C. § 1291 because the District Court's judgment constituted a final decision.

## II.

On March 11, 1999, a civil suit was brought against St. Peter's Church, as well as the Episcopal Diocese of Pennsylvania, by the 19th Street Baptist Church in the Philadelphia Court of Common Pleas (the "Underlying Suit"). St. Peter's Church sent a copy of the complaint in the Underlying Suit to its insurance broker on March 26, 1999. The complaint reached ANF's claims division on April 1, 1999.[1] As of that date, and in

---

[1] ANF provided primary liability insurance coverage to St. Peter's Church for, *inter alia*, the "wrongful acts" of the Church's officers and directors, and Agricultural provided

3

accordance with the unchallenged ruling of the District Court, ANF had a duty to provide a defense to St. Peter's Church and to reimburse the Church for any necessary and reasonable defense expenses incurred by the Church until it was able to provide that defense. *See American States Ins. Co. v. Maryland Cas. Co.*, 628 A.2d 880, 887 (Pa. Super. Ct. 1993) ("Under Pennsylvania law, an insurance company is obligated to defend an insured whenever the complaint filed by the injured party may *potentially* come within the policy's coverage" and that duty "remains with the insurer until the insurer can confine the claim to a recovery that is not within the scope of the policy."); *see also Widener University v. Fred S. James & Co., Inc.*, 537 A.2d 829, 833 (Pa. Super. Ct. 1988) (noting that an insurer's duty to defend is triggered when it is "reasonably alerted of an action to which its duty would extend"). On March 31, 1999, the Church engaged Sprague & Sprague as interim counsel so that a timely answer could be filed.

ANF issued a reservation of rights letter on June 25, 1999, which, *inter alia*, acknowledged coverage of the breach of fiduciary duty claim set forth in Count II of the amended complaint in the Underlying Suit, provided that a wrongful act occurred during the coverage period. The letter acknowledged a duty to defend, subject to the reservations stated therein, and expressed an intention "to refer the defense of [the] action to new counsel." App. at 21a. We assume, without deciding, that this reservation of

---

umbrella coverage. The relevant insurance policy provided, subject to certain limits and exclusions, that "[ANF] will have the right and duty to defend any 'suit' seeking . . . 'damages.'" App. at 661a.

4

rights letter created no conflict of interest between the insurer and the insured. We therefore assume, without deciding, that ANF, barring a material breach by it, retained the right, as well as the duty, to select and pay counsel.

In the five months following the filing of the complaint, ANF provided no defense and made no reimbursement of expenses incurred by the Church. At various points in time during that period, it did offer to engage five different counsel: (1) Margolis Edelstein; (2) Post & Schell, P.C.; (3) Marshall, Dennehey, Warner, Coleman & Goggin; (4) Manta & Welge; and (5) Sprague & Sprague. Margolis Edelstein was rejected because it represented the Episcopal Diocese of Pennsylvania, a co-defendant in the Underlying Suit; Post & Schell was rejected because it counseled ANF as to whether the claims in the Underlying Suit were covered by the Church's insurance policy; Marshall, Dennehey was not engaged because ANF had removed the firm from its approved counsel list; and Manta & Welge was not engaged because it lacked relevant experience. Finally, Sprague & Sprague was not engaged because when it was presented with the fee schedule guidelines ANF insisted upon, Sprague & Sprague found "them unacceptable." App. at 38a.[2] Those guidelines, *inter alia*, would have imposed a maximum rate of $130 per hour for a partner's work and $115 per hour for the work of an associate.

---

[2]On August 2, 1999, ANF was advised that the "Church has discussed [the fee schedule guidelines] and the other guidelines with Sprague & Sprague which has advised that it finds them unacceptable." App. at 38a.

Importantly, ANF does not assert before us that its tender of representation by the first four of these firms satisfied its obligation to provide a defense. Rather, Appellants argue that an offer made months later to engage Sprague & Sprague on different terms satisfied ANF's obligation to provide a defense.[3] The undisputed record evidence, however, is that Sprague & Sprague was unwilling to undertake the representation on the terms ANF was insisting upon in August of 1999.

On August 12, 1999, five months after suit was filed, St. Peter's Church wrote to ANF advising it that the Church regarded ANF as being in breach of its duty to provide a defense, and that the Church would conduct its own defense and look to ANF for reimbursement. The letter concluded:

> In sum, it is clear that [ANF] has an obligation to reimburse St. Peter's for the defense costs that it has incurred to date and an obligation going forward to pay the law firm of Sprague and Sprague its attorney fees and costs as they are incurred. Please contact me to discuss the amount of costs which should be reimbursed to St. Peter's immediately and the orderly procedures which should be established concerning the future payment of the fees and expenses of the Sprague law firm.

App. at 42a.[4]

---

[3]On March 15, 2000, over a year after the underlying suit was filed, counsel for ANF advised counsel for the Church "in accordance with our recent conversation" that his "client has accepted the [$200] hourly rate for the counsel fees incurred on behalf of the Church", provided that "a legal auditing service" agree that the hours charged were reasonable. App. at 66a.

[4]The August 12th letter took the position that the reservation of rights letter had created a conflict of interest and that "by meeting its defense obligations under a reservation of rights, [ANF had] renounced its control of the litigation." App. at 41a. As

On September 14, 1999, six and a half months after suit was filed, coverage counsel for ANF responded:

> [ANF] has sought to retain independent counsel to represent the interests of St. Peter's Church. [ANF] also indicated that it would be agreeable to retaining the firm that the Church had engaged to represent the interests of the Church if the firm was willing to work within the [ANF] fee schedule. The Church's refusal to agree to either of these proposals puts the Church in violation of the terms and conditions of the policy of insurance.
>
> Again, it is clear that [ANF] has no obligation to reimburse St. Peter's for the defense costs incurred to date and no obligation to pay counsel fees to the law firm of Sprague and Sprague for the future. Notwithstanding these comments, please be advised that [ANF] continues to remain open to the possibility of amicably resolving these issues.

App. at 45a-46a.

On April 17, 2000, thirteen months after the underlying suit was filed, the Church filed this suit against ANF and Agricultural. As of that time, while ANF had made further, conditional, offers to engage Margolis Edelstein and Sprague & Sprague, it neither provided a defense nor paid any reimbursement to the Church for the legal fees it had incurred in defending the Underlying Suit, *i.e.*, at that point $284,000.

We conclude that, on August 12, 1999, ANF was in material breach of its duty to defend. *Vanderveen v. Erie Indem. Co.*, 208 A.2d 837, 838 (Pa. 1965) ("An

---

earlier indicated, we express no opinion on whether this position was legally correct. As explained hereafter, we hold only that even accepting ANF's characterization of its duty to defend, it was in material breach of its policy as of August 12, 1999, and the Church had a right to mitigate its damages by going forward with its own counsel.

7

insurer's failure or refusal to defend a claim within the scope of an insurance policy constitutes a breach of contract for which it is subject to damages recoverable in an action of assumpsit."). That duty required ANF to provide counsel able and willing to undertake representation of the Church in the underlying litigation, and it had failed to do so despite the fact that the suit was over five months old. *See, e.g.*, *Gray Cary Ware & Freidenrich v. Vigilant Ins. Co.*, 8 Cal. Rptr.3d 475, 477 (Cal. Ct. App. 2004) (noting that the duty to defend "includes providing competent counsel and paying all reasonable and necessary costs"). ANF's offer to engage Sprague & Sprague on terms that firm was unwilling to accept clearly did not satisfy this duty to defend. As a result, the Church was entitled to declare ANF in breach, provide its own defense, and look to ANF for reimbursement of the reasonable costs of that defense. *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 188 A.2d 320, 322 n.5 (Pa. 1963) ("[T]he recovery for breach of the covenant to defend will ordinarily be the cost of hiring substitute counsel and other costs of the defense."); *Zeitz v. Zurich General Acc. & Liability Ins. Co.*, 67 A.2d 742, 746 (Pa. Super. Ct. 1949) (holding that an insurer's failure to fulfill its duty to defend "subjects it to liability to the insured for the costs and fees expended in successfully opposing a claim for damages"). The Church has done so and is therefore entitled to the judgment the District Court has entered in its favor.[5]

_____

[5]ANF contends on appeal that it complied with its duty to defend by offering, in January 2000, to pay Sprague & Sprague for its representation of the Church at Sprague & Sprague's $200 hourly rate, subject to an auditor's approval of Sprague & Sprague's hours reasonably spent on the Church's defense. Because we find that ANF was in

III.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

breach as of August 12, 1999, we do not reach the question of whether ANF's belated January offer would have complied with its duty to defend.